[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a habeas petition brought by Christopher Crowder (hereinafter "Petitioner"), claiming ineffective assistance of counsel at the trial level in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I Section 8 of the Connecticut Constitution. An evidentiary hearing was held before this Court on May 2, 2000, concerning the Amended Petition of the Petitioner dated July 23, 1999. From the totality of the evidence, the Court finds as follows:
1. In large part the Court has based its decision on the credibility of the witnesses. The evaluation of such credibility is based upon their demeanor in testifying, their recall of certain events or their lack thereof, the interests of the witnesses or lack thereof, the conflicts of testimony among the witnesses and their responses on both direct and cross-examination. At this hearing, the Court found the testimony of attorney William Schipul, Petitioner's trial counsel, more credible than the testimony of the Petitioner, although the Petitioner's testimony was in some parts candid and forthright.
2. The Petitioner makes three claims in his amended petition as to the manner in which his counsel was ineffective, and the Court will address each separately and in the following order.
 a. Said attorney "failed to inquire into Petitioner's alcohol dependent condition at the time of the charged offense when Petitioner was alcohol dependent resulting in the negotiation of an inappropriate plea agreement." The Court finds that Attorney Schipul did in fact inquire as to alcohol dependency and discussed this issue with Dr. Erza Griffith, a psychiatrist selected by Attorney Schipul to assist him in evaluating various potential defenses of the Petitioner to the charge of murder. From the Petitioner's own testimony before this Court, he CT Page 12403 stated that when he met with Dr. Griffith at the Walker Reception Center, he told him about his history of alcoholism. He also told this Court "I didn't feel I was intoxicated at the time of the killing", and he so indicated to his attorney as well as Dr. Griffith. During the very thorough and complete canvass of his guilty plea by Judge John Ronan, the sentencing judge, he, at no time told the Court that he had an alcohol problem even though he was invited to make comments and ask questions. In the two statements that he gave to Bridgeport Police, State's Exhibits 1 and 2, he did not mention any problem of alcoholism. The Petitioner, in answer to the Court's question in the habeas trial, stated that he had consumed the evening before the crime was committed approximately three-quarters of a bottle of Johnny Walkers. His babysitter, Ms. Helms, in her statement to the police, never mentioned alcohol. It is, therefore clear, that the Petitioner did discuss his longtime alcohol dependence with Dr. Griffith and with Attorney Schipul. Further, it was Dr. Griffith's opinion that the Petitioner's alcoholic history would not benefit him or be a reason for the killing of the victim. The claim in the Amended Petition as to whether the attorney "failed to inquire into Petitioner's alcohol dependent condition at the time of the charged offense, when Petitioner was alcohol dependent", is contradicted by his own testimony that he didn't feel he was intoxicated at the time of the killing. The Court finds that trial counsel did inquire both into his history of alcohol dependency and whether he was alcohol dependent at the time of the killing. Based upon the Petitioner's own statements, he was clearly not intoxicated at the time of the killing. Further, both the Petitioner and his counsel were aware of his being seen by the babysitter the morning of the killing and being seen by his co-workers at the restaurant where he worked after the killing. The Petitioner further testified that when he woke up the morning of the killing after having consumed alcohol the night before, he had a bad headache, but "he had CT Page 12404 to go on". As to his mental condition the night before the killing, Petitioner indicated at the trial before this Court that he took Xanax as well as the liquor in hopes of committing suicide. He also testified that the psychiatrist, Dr. Griffith, knew about this, and he also stated that killing the victim had nothing to do with thoughts of suicide.
 b. Petitioner claims that Attorney Schipul "failed to adequately advise the Petitioner concerning his options regarding the decision whether to enter a guilty plea or proceed to trial." The Court rejects this claim based upon, inter alia, a letter to Attorney Schipul, Respondent's Exhibit 5, in which he outlined why he did not want to go to trial and stated "Please consider this because I really want to avoid a trial and if you consider please do so before 12/7/95." Suffice it to say that Respondent's Exhibit 5 clearly indicates throughout that he was aware of his various option as to whether proceeding to trial or entering a guilty plea. The Court also believes the statements of Attorney Schipul that he had described the critical elements of the statements of witnesses which had been taken by the police or the states attorney and also told him of his discussions with Dr. Griffith, and he testified that the Petitioner was well aware of the danger of going to trial as opposed to a plea bargain. He said that Dr. Griffith spent an hour with the Petitioner and explained to counsel who then explained it to the Petitioner, that the alcohol had no effect on his state of mind at the time of the killing nor did his history of alcohol and that the defense of extreme emotional disturbance was not viable. He further advised the Petitioner that his history of alleged violence towards the victim and his subsequent actions, including the fact that he lied in his first statement to the police, could have been a very negative factor in his trial.
 c. The Petitioner also claims that his trial attorney "failed to conduct sufficient investigation into the defense of extreme emotional distress as that CT Page 12405 defense related to the facts of the prosecution's case." The Court also rejects this claim. Counsel did investigate this by retaining Dr. Griffith who came highly recommended to him, and it is clear from Attorney Schipul's testimony as well as that of the Petitioner that the details of the killing were discussed with Dr. Griffith by both counsel and the Petitioner, and Dr. Griffith and Attorney Schipul reasonably concluded that the defense of extreme emotional distress would not succeed.
Accordingly, this Court finds that the Petitioner has failed to sustain his burden of proving by a preponderance of the evidence that he was denied the effective assistance of counsel at the trial level.
The Amended Petition for a Writ of Habeas Corpus is, therefore, denied.
Rittenband, JTR
Note: At the request of counsel the Court permitted them to order transcripts of the habeas hearing and file briefs. However, by October 2, 2000 both counsel have waived the filing of transcripts and briefs. Therefore, the Court has based its decision on the pleadings and the actual hearing.